*765 OPINION OF THE COURT
Peter P. Rosato, J.
By way of order to show cause dated June 24, 2003 and made returnable on July 15, 2003, petitioner herein seeks an order declaring RPTL 727 inapplicable to the proceedings herein. Alternatively, pursuant to RPTL 710, petitioner seeks an order consolidating the proceedings herein with certain other proceedings presently pending before this court, namely, the proceedings in Ford Leasing Dev. Co. v Assessor of Town of Greenburgh et al. (Index Nos. 15240/96, 15779/97, 14271/98, 14838/99, 15325/00). Petitioner also seeks an order setting an immediate trial date for the above-captioned Niksus proceedings.
The subject of the instant proceeding is an automobile dealership, i.e., Scarsdale Ford, Inc. located at 887 Central Park Avenue in Scarsdale, New York. Prior to sale of the subject property in December 2000, Ford Leasing Development Co. leased said property to Scarsdale Ford, Inc., whose president and sole shareholder was Mr. Marvin Suskin.[1] However, in and about December 2000, Ford sold the subject property to Niksus Realty for $1,833,000. Mr. Suskin is acknowledged to be the owner of Niksus.
Following numerous conferences, under court supervision, a settlement was reached in May 2003 between counsel for Ford, the Town of Greenburgh and intervenor-respondent Edgemont Union Free School District for the 1996-2000 proceedings. While petitioner Niksus herein, the new owner of the property, was, per the instant order to show cause dated June 24, 2003, formally denied a temporary stay precluding the court from signing off on the proposed settlement pending determination of the instant application, the court, as a practical matter, has refrained from signing any such proposed order or judgment pending decision herein.[2]
In seeking to prohibit respondents from enforcing RPTL 727 herein, petitioner relies on what it characterizes as the “strik *766 ingly similar” decision rendered in Susquehanna Dev. v Assessor of City of Binghamton (185 Misc 2d 267 [Sup Ct, Tompkins County 2000, Relihan, J.]) wherein the court, on the particular facts of that case, did in fact hold that RPTL 727 was unconstitutional as applied to a new owner. However, upon closer scrutiny it is readily apparent that very significant differences exist vis-á-vis the facts of the instant case and the facts presented in Susquehanna (supra). In the Susquehanna case, the court was careful to point out “an unlikely combination of factors” would be required in order for a subsequent owner to defeat the three-year moratorium period. (See Susquehanna Dev. v Assessor, supra at 273.) More specifically, the Susquehanna court held that two factors in particular would be required to defeat section 727, namely, (1) an assessment which exceeds constitutional limits, and (2) a transferee who had absolutely no connection whatsoever to the assessment reduction at issue. Both of those factors existed in Susquehanna. In fact, in Susquehanna (supra), the current assessment ($1,600,000) was actually quadruple the $400,000 purchase price petitioner had paid to acquire the subject property literally 24 hours prior to the City again reassessing the property at the $1,600,000 level. Such assessment glaringly violated the mandate contained at article XVI, § 2 of the NY Constitution that “ ‘[assessments shall in no case exceed full value,’ ” a recent arm’s length sale being considered the best evidence of value. (See Susquehanna, supra at 269.)
Here in the instant case, on the other hand, the arguments raised by petitioner, the subsequent owner-transferee, are markedly different. Here, petitioner’s argument rests entirely on annual fluctuations in the equalization rate. More specifically, petitioner represents that the equalization rate for the Town of Greenburgh in the year 2000 was 6.20% whereas in 2002 the equalization rate was 4.52%, a decline of 27% from the year 2000 rate. Thus, petitioner argues that the assessment agreed upon by the previous owner for calendar year 2000 “would equate to a market value 27% higher for 2002.” (See petitioner’s supporting affirmation, dated June 24, 2003, at 3.) Petitioner then goes on to argue, in rather bald and conclusory fashion, that RPTL 727, if applied herein, “would cause the subject property’s assessment to be in excess of its full market value.” (See petitioner’s supporting affirmation at 4.)
The instant case, while not strikingly similar to Susquehanna (supra), is in fact strikingly similar to the recent unreported *767 March 20, 2003 decision, order and judgment of this court in Rib Knitting v Town of Ramapo (Sup Ct, Rockland County, Index No. 1542/02). In Rib Knitting, the plaintiff sought a declaration declaring that RPTL 727 is unconstitutional as applied to the subject property.[3] The plaintiff in Rib Knitting (supra), much like the petitioner herein, was a subsequent owner of the subject property who took no part in the settlement reached by the prior owner relative to earlier tax years. As in the instant case, the plaintiff in Rib Knitting (supra) argued that the facts of Rib Knitting were much like the facts of Susquehanna (supra), and sought therefore to have the court adopt Susquehanna as precedent. However, this court in Rib Knitting ultimately declined to follow Susquehanna for the simple reason that, on closer scrutiny, the facts of Rib Knitting were actually markedly different from the facts of Susquehanna. The fact pattern in Rib Knitting (supra) did not generate the “unlikely combination of factors” found in Susquehanna (supra at 273). Rib Knitting did not involve an assessment in excess of constitutional limits, as occurred in Susquehanna. Rather, the crux of plaintiffs argument in Rib Knitting, like the crux of petitioner’s argument herein, is predicated on annual fluctuations in the equalization rate for the subject municipality. That is to say, petitioner herein argues that if he is “locked in” by RPTL 727 for calendar years 2001 and 2002 at the figure agreed to by the prior owner for year 2000, he will be unable to resolve these more recent proceedings at the appropriate equalization rates for these years.[4] Such an argument, as this court previously found in Rib Knitting (supra), simply does not serve to duplicate the “unlikely combination of factors” which arose in Susquehanna. As noted above, here in Niksus, and unlike Susquehanna, there is, pivotally, no assessment in excess of constitutional limits, as evinced by the recent sale price of the subject property, i.e., $1,833,000 in December 2000. (And see corrected, i.e., reduced assessments for calendar years 1996-2000, all far lower than the December 2000 purchase price, as contained at *768 proposed stipulation of settlement, exhibit B to opposing affirmation of Ford Leasing Development Co.) Moreover, in view of petitioner’s acknowledgment that Mr. Marvin Suskin, now the owner of petitioner Niksus, was also the president and sole shareholder of Scarsdale Ford, Inc., the former lessee of the subject property, it is at least arguable that Niksus may also fail to meet the second criteria identified in Susquehanna, i.e., a wholly unconnected transferee.
Accordingly, for all the above-stated reasons, the court finds Susquehanna (supra) to be distinguishable and therefore denies petitioner’s instant application to declare RPTL 727 inapplicable to the instant proceedings.
Further, to the extent petitioner, in the alternative, seeks to consolidate the instant proceedings with the aforementioned Ford Leasing proceedings pursuant to RPTL 710, the court, in view of the instant decision herein, will now proceed to sign off on a proposed order and/or stipulation of settlement arising from the settlement of the Ford Leasing proceedings. That being the case, there will literally be nothing, i.e., no pending petitions, to consolidate the instant proceedings with. Therefore, petitioner’s alternative application for consolidation under RPTL 710, combined with a further request that the court set an immediate trial date, is hereby denied as well in all respects.

. Marvin Suskin is also described by petitioner as the “net lessee” under the Ford lease, responsible for payment of all real estate taxes for the years 1996-2000.

. Counsel for Ford Leasing Development Co., petitioner in the related proceedings herein for years 1996-2000, has submitted an opposing affirmation dated July 11, 2003 wherein they oppose so much of Niksus’ application as seeks consolidation. Ford Leasing does not oppose that branch of the instant application seeking to declare RPTL 727 inapplicable to the instant proceedings.

. As noted at the outset, petitioner herein likewise seeks a declaration from the court, namely, a declaration that RPTL 727 is simply inapplicable to the instant proceedings. As this court pointed out in Rib Knitting (supra), the appropriate procedural vehicle by which to seek such relief would be a declaratory judgment action brought on pursuant to CPLR 3001. Accordingly, to the extent petitioner seeks a declaration that RPTL 727 is inapplicable herein, the court will deem such claim to have been brought on pursuant to CPLR 3001.

. RPTL 727, it should be noted, does not list fluctuation in equalization rates as one of its stated exceptions.